UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PONANI SUKUMAR, an individual,<br><br>                                     Plaintiff,<br><br>v.<br><br>INTERNATIONAL OLYMPIC COMMITTEE, an international non-profit, non-governmental organization; and DOES 1 through 20, inclusive,<br><br>                                     Defendant. | Case No.:  21cv215-GPC(AGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION WITHOUT LEAVE TO AMEND**<br><br>[Dkt. No. 11.) |

Before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), 12(b)(2), and 12(b)(6).  (Dkt. No. 11.)  Plaintiff filed an opposition and Defendant filed a reply.  (Dkt. Nos. 16, 18.)  Based on the reasoning below, the Court GRANTS Defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) without leave to amend.

## Background

Plaintiff Ponani Sukumar ("Plaintiff" or "Sukumar") filed a complaint for declaratory relief against the International Olympic Committee ("IOC").  (Dkt. No. 1, Compl.)  IOC is an international non-profit, non-governmental organization that is headquartered in Lausanne, Switzerland.  (*Id.* ¶ 2.)  IOC is believed to hold the rights to

the Olympic properties, including the iconic Olympic symbol consisting of the five interlaced rings ("Olympic Rings"). (*Id.* ¶ 3.) Non-party the Swatch Group (U.S.) Inc. includes Omega USA and Omega Retail Division, (collectively "Omega") which is the operator of the Omega Boutique store in San Diego, CA. (*Id.* ¶ 9.)

Plaintiff is a collector of Omega timepieces. In 2013, Plaintiff was solicited by Omega to purchase a limited edition and collectible commemorative replica gold Olympic stopwatch of the original Olympic 1932 Rattrapante chronograph which was used as the official timekeeper of the Olympic Games in Los Angeles. (*Id.* ¶ 10.) Plaintiff agreed to purchase the stopwatch on the condition that the Omega stopwatch and accompanying pouch and ribbons included the Olympic Rings at a cost of about $110,000. (*Id.* ¶¶ 11-13.) Later, Omega determined that it was unwilling or unable to provide the customization and returned the deposit and the transaction was cancelled. (*Id.*) After realizing there were not enough purchasers willing to buy these unique and expensive watches, Omega agreed to Plaintiff's customization requirements which included placing the Olympic Rings on the stopwatch, pouch and ribbons. (*Id.* ¶ 14.) Based on Omega's promises, Plaintiff purchased the Olympic stopwatch in red (Rose) gold. (*Id.* ¶ 15.) Relying on Omega's representations that it would customize the stopwatch, pouch and ribbons to include the Olympic Rings, Plaintiff agreed to purchase two additional commemorative replica gold Olympic stopwatches. (*Id.* ¶¶ 16, 17.) The total purchase price for the three stopwatches was more than $350,000. (*Id.* ¶ 17.)

When Omega delivered the three stopwatches to Plaintiff, the items were substandard and did not meet the specifications Plaintiff had communicated to Omega. (*Id.* ¶¶ 21, 22.) Plaintiff attempted an informal resolution concerning the quality and workmanship of the pouches and ribbons, but Omega rejected any attempt to resolve the issue and refused to refund the purchase. (*Id.* ¶ 23.) During these communications, Omega represented that it had authorization from the IOC to engrave the Olympic Rings on the three stopwatches as well on the customized leather pouches and ribbons. (*Id.* ¶ 25.)

Defendant holds the rights to the Olympic Rings or the "Olympic symbol." (*Id.* ¶ 24.) Because Plaintiff and Omega could not resolve the dispute, Plaintiff filed a complaint against Omega in New Jersey state court which is currently pending. (*Id.* ¶ 26.) In that case, Plaintiff sought all documents showing that Omega had received authorization from the IOC to use the Olympic Rings on Plaintiff's stopwatches and custom pouches and ribbons but Omega refused. (*Id.*) During settlement discussions, Plaintiff reiterated his desire to commission someone to design and manufacture custom pouches and ribbons for the three Olympic stopwatches he purchased. (*Id.* ¶ 27.) He proposed that he be allowed a one-time use of the Omega logo and the Olympic Rings for use on the custom pouches and ribbons. (*Id.*) His use of the Omega logo and the Olympic Rings would be consistent with their use on the previously designed custom pouches and ribbons already approved by Omega and purportedly approved by the IOC. (*Id.*) Omega rejected the proposal explaining that "Omega does not have the authority under its license to authorize a third-party to use Olympic IP and cannot therefore authorize Mr. Sukumar to use the Olympic Rings or IOC intellectual property." (*Id.* ¶ 28.) According to Plaintiff, Omega's explanation was inconsistent from its prior action of outsourcing the manufacture of Plaintiff's custom pouches and ribbons, including use of the Olympic Rings, to a third-party vendor. (*Id.* ¶ 29.) Plaintiff asserts that it is not clear why the same authorization from Omega could not be extended to Plaintiff in connection with the very same project. (*Id.*) Plaintiff even offered to use the same third-party vendor that had previously worked on the pouches and ribbons on behalf of Omega. (*Id.*)

Because Plaintiff was unable to get a written confirmation of the scope of authorization by the IOC to Omega and unable to get authorization from Omega to allow Plaintiff to take over responsibility for the custom pouches and ribbons, he reached out to the IOC, in a letter dated October 30, 2019, to obtain authorization information. (*Id.* ¶ 30; *id.*, Ex. A.) When Plaintiff did not receive a response from the IOC, he sent another

letter on January 7, 2021.  (*Id.* ¶ 32; *id.*, Ex. B.)  Again, the IOC did not respond to the second letter.  (*Id.* ¶ 33.)

Plaintiff is in possession of three customized Omega limited edition and collectible commemorative replica gold Olympic stopwatches with Olympic Rings engraved on them and claims he has concerns about the propriety of the Olympic Rings on the watches as well as Omega's authorization from the IOC for the Olympic Rings to be embossed on the pouches and ribbons.  (*Id.* ¶¶ 34, 35.)  Plaintiff also seeks clarification of Omega's authority to include the Olympic Rings on any custom pouches and ribbons that may be completed consistent with the original agreement between Plaintiff and Omega.  (*Id.* ¶ 35.)

Plaintiff seeks declaratory judgment concerning the use of the IOC intellectual property, including the Olympic Rings, on the Omega stopwatches and the related custom pouches and ribbons including but not limited to "(a) the right of Omega and Plaintiff to utilize the IOC intellectual property and Olympic Rings on the three special edition stopwatches; (b) the right of Omega and Plaintiff to utilize the IOC intellectual property and Olympic Rings on the custom pouches and ribbons for Plaintiff; (c) the right of Omega to engage a third-party vendor to produce the custom pouches and ribbons for Plaintiff that utilize the IOC intellectual property and Olympic Rings; and (d) Plaintiff's right to engage a third-party vendor to produce the custom pouches and ribbons that utilize the IOC intellectual property and Olympic Rings."  (*Id.* ¶ 38.)

## Discussion

### A. Legal Standard as to Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Rule 12(b)(1) jurisdictional attacks can be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Here, Plaintiff argues that Defendant appears to be mounting a facial attack and the Court agrees.  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal

jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack, the court assumes the truth of the complaint's allegations and draws all reasonable inferences in plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Ultimately, Plaintiff has the burden to demonstrate that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

## B. Declaratory Judgment Act

The Declaratory Judgment Act ("DJA") provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The phrase "case of actual controversy" under the DJA refers to Article III's "Cases" and "Controversies" for justiciable claims. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 1919, 126-27 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 225, 240 (1937)); *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (an actual controversy under the DJA is identical to Article III's constitutional case or controversy requirement). To constitute a case or controversy, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Without a "case or controversy", the Court lacks subject matter jurisdiction under Rule 12(b)(1). *Fleck and Assoc., Inc. v. Phoenix, an Arizona Mun. Corp.*, 471 F.3d 1100, 1103–04 (9th Cir. 2006). "For the parties to have 'adverse legal interests,' 'there [must] be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it.'" *Unisense Fertilitech A/S v. Auxogyn, Inc.*, 896 F. Supp. 2d 822, 828 (N.D. Cal. 2012)

(quoting *Microchip Tech. Inc. v. Chamberlain Group, Inc*., 441 F.3d 936, 943 (Fed. Cir. 2006)); *see Arris Group Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1374–75 (Fed. Cir. 2011) ("An 'adverse legal interest' requires a dispute as to a legal right—for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring.").

The Court conducts a two-step inquiry as to whether it should exercise DJA jurisdiction. First, the district court must "inquire whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citation omitted); *Kearns*, 15 F.3d at 143 (noting there are two distinct inquiries). Once the first part has been met, the district court must, using its discretion, next decide, using the factors in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942) whether to exercise its jurisdiction. *Id.* Essentially, the district court "must balance concerns of judicial administration, comity, and fairness to the litigants." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991).

Defendant argues the complaint should be dismissed for lack of any "actual controversy" as there are no adverse legal interests between the parties. First, besides Plaintiff's two letters received by the IOC, it has not had any communication with Sukumar. Therefore, Plaintiff fails to allege he can have a reasonable apprehension that he will be subject to suit by the IOC. (Dkt. No. 11 at 13-14.) In response, Plaintiff contends that he and the IOC have adverse legal interests because the issue "is whether the IOC will bring action against Plaintiff for trademark infringement when Plaintiff attempts to complete the custom pouches and ribbons project by hiring a third-party vendor who will be including the Olympic Rings on those pouches and ribbons." (Dkt. No. 16 at 16.)

As an initial matter, the opposition raises facts not alleged in the complaint arguing that Plaintiff has a reasonable apprehension that the IOC will bring a trademark infringement action against him. Other than that argument, Plaintiff has not shown that the complaint, as plead, alleges a reasonable apprehension that he would be subject to

liability by the IOC. Therefore, the complaint, as currently plead, presents no allegation of any "real and reasonable apprehension" that Plaintiff will be subject to any type of liability by the IOC. On this basis, the Court GRANTS Defendant's motion to dismiss for failing to sufficiently allege an actual case or controversy under the DJA.

However, the Court notes that even if Plaintiff were granted leave to amend the complaint to add allegations concerning his "reasonable apprehension" that the IOC will bring a trademark infringement action against him, the allegations presented in the opposition do not demonstrate an actual case or controversy. Therefore, the Court declines to grant Plaintiff leave to amend.

In the Ninth Circuit, a declaratory judgment action that a trademark is invalid or that the plaintiff is not infringing asserts a case or controversy "if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555-56 (9th Cir. 1990)). In *Chesebrough-Pond's*, the Ninth Circuit explained,

> In applying this standard, we focused upon the position and perceptions of the plaintiff, declining to identify specific acts or intentions of the defendant that would automatically constitute a threat of litigation. The acts of the defendant were instead to be examined in view of their likely impact on competition and the risks imposed upon the plaintiff, to determine if the threat perceived by the plaintiff were real and reasonable.

*Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982) (citing *Societe de Conditionnement v. Hunter Eng'g Co*., 655 F.2d 938, 944 (9th Cir. 1981)).

The Court notes that the cases cited by Plaintiff involve situations where there was an existing licensing agreement between the parties or the defendant made some direct or indirect affirmative act signaling a possible infringement action. *See e.g., Epos Tech. Ltd v. Pegasus Techs., Ltd*., 636 F. Supp. 2d 57, 61 (D.D.C. 2009) (sufficient case or controversy demonstrating an "actual or imminent injury" of "sufficient immediacy and reality" where the defendant accused the plaintiff of possible infringement and caused

injury by causing investor relations to sour and delayed the release of its new product line); *MedImmune*, 549 U.S. at 127-28 (existing patent licensing agreement between the parties); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341-42 (Fed. Cir. 2008) ("where Prasco has suffered no actual present injury traceable to the defendants, and the defendants have not asserted any rights against Prasco related to the patents nor taken any affirmative actions concerning Prasco's current product, one prior suit concerning unrelated patents and products and the defendants' failure to sign a covenant not to sue are simply not sufficient to establish that Prasco is at risk of imminent harm from the defendants and that there is an actual controversy between the parties of sufficient immediacy and reality to warrant declaratory judgment jurisdiction. Although we understand Prasco's desire to have a definitive answer on whether its products infringe defendants' patents, were the district court to reach the merits of this case, it would merely be providing an advisory opinion. This is impermissible under Article IIII.")

In this case, Plaintiff has not alleged any conduct, either in the complaint or in his opposition, by the IOC that would cause a "reasonable apprehension" that he would be subject to a trademark infringement suit. In fact, it was Plaintiff that initiated communication with the IOC and despite sending his letters explaining his position, the IOC still did not respond with any indication that it would file an infringement claim against Plaintiff. Next, Omega is not a party to this action and Plaintiff has not provided legal authority that the Court may adjudicate rights of a non-party. Therefore, the Court does not have any jurisdiction over Omega. Finally, even if Omega was a party in this case, it is not clear how the rights of Omega to utilize IOC's intellectual property has any bearing on whether Plaintiff has the right to independently to utilize IOC's intellectual property. (*See* Dkt. No. 1, Compl. ¶ 38.)

At bottom, Plaintiff is a consumer who purchased collectible Omega stop watches engraved with the Olympic Rings as well as pouches and ribbons embossed with the Olympic Rings, and because he was not satisfied with the pouches and ribbons that

Omega produced,[1] he seeks to independently have the pouches and ribbons with the Olympic Rings made either through the third party used by Omega or an independent third party. However, to do so, he must seek permission from the intellectual property holder, the IOC, and not by filing a declaratory judgment lawsuit. Plaintiff acknowledges that all rights to the Olympic Rings belong exclusively to the IOC and the Olympic Rings may only be used "with the express prior written consent of the IOC." (Dkt. No. 1, Compl. ¶ 24.) Therefore, his declaratory relief action is merely seeking an answer to whether he may use the Olympic Rings on the pouches and ribbons in lieu of obtaining prior written consent from the IOC. That is not a proper use of the DJA.

Therefore, even if the Court granted Plaintiff leave to amend to add the allegation that he has a reasonable apprehension that the IOC will bring a trademark infringement suit, those allegations are not sufficient to establish a case or controversy under the DJA.[2] Accordingly, the Court GRANTS Defendant's motion to dismiss for lack of subject matter jurisdiction and without leave to amend.[3]

## Conclusion

Based on the above, the Court GRANTS Defendant's motion to dismiss for lack of subject matter jurisdiction without leave to amend. The Clerk of Court shall close the case. The hearing set on June 2, 2021 shall be **vacated.**

IT IS SO ORDERED.

Dated: June 1, 2021

Hon. Gonzalo P. Curiel
United States District Judge

---

[1] Plaintiff does not allege the stopwatches were defective or did not comply with the customization he discussed with Omega. (*See* Dkt. No. 1, Compl.)
[2] Because the Court finds that the first step under the DJA has not been met, the Court declines to consider the second step.
[3] Because the Court grants dismissal under the DJA, the Court need not address Defendant's additional arguments for dismissal under Rule 12(b)(1), 12(b)(2) and 12(b)(6).